**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| MARIA FERNANDA RICO ANDRADE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL NO. 2:15-CV-103 |
| | § | |
| UNITED STATES OF AMERICA, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The Court has before it Plaintiff's Complaint, Dkt. No. 1, Defendants' Motion to Dismiss Complaint Against All Defendants, Dkt. No. 17, Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, Dkt. No. 18, and Defendants' Reply in Support, Dkt. No. 21. For the reasons below, the Court finds that dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate.

### I.    Background

This lawsuit seeks redress for the death of Gerardo Lozano Rico ("Lozano"). Compl. ¶ 1. Maria Fernanda Rico Andrade ("Andrade"), Lozano's mother, is the named Plaintiff, and brings this action in her individual capacity and on behalf of the estate of Lozano. *Id.* at ¶ 3. Andrade alleges that Lozano was killed as a result of a pattern and practice in which United States Border Patrol agents intentionally placed themselves in the exit path of moving vehicles in order to justify the use of deadly force against the vehicles' occupants. *Id.* at ¶ 1.

Because the Court has before it Defendants' motion to dismiss, the Court accepts the allegations in the complaint as true for purposes of this opinion. *See Hernandez v. Mesa*, 137 S.Ct. 2003 (2017) (citing *Wood v. Moss*, 134 S.Ct. 2056, 2067 (2014)). This case emerges out of an incident that occurred on the afternoon of Nov. 3, 2011. Lozano was driving a black Lincoln Navigator along Farm Road in San Patricio County with five other passengers when United States Customs and

Border Protection ("CBP") Agents Eberto Cabello ("Cabello") and Jose Tejeda ("Tejeda") (collectively "Agents") began following the vehicle. *Id.* at ¶ 26. The Agents ran a registration check on the Navigator, which revealed that the vehicle was registered in Houston, Texas. *Id.* Though the Navigator did not appear to violate any traffic laws and "nothing appeared outwardly suspicious with the registration check," Cabello initiated a traffic stop. *Id.* The Navigator slowed and pulled to the southbound side of Farm Road 666, the road on which it was traveling. As the vehicle slowed, all occupants, unarmed, attempted to flee from the Agents as the vehicle came to a complete stop. *Id.*

Lozano attempted to escape from the driver's side rear passenger door. *Id.* at ¶ 27. Cabello slammed the door shut to prevent Lozano from exiting the vehicle. *Id.* Lozano then climbed from the rear passenger seat into the driver's seat. *Id.* Cabello then slammed his baton into the window, shattering the window. *Id.* Lozano reversed the Navigator up against a nearby fence. *Id.* at ¶ 28. Lozano then placed the vehicle in drive in order to continue attempting to escape. According to Andrade, Cabello placed himself directly in the line of sight of the vehicle and drew his weapon as Lozano drove the vehicle forward. Cabello, along with Tejeda, who was also on the scene, fired several rounds into the vehicle as Lozano drove the vehicle forward. *Id.* at ¶¶ 28–29. One bullet entered the vehicle from the front passenger side. *Id.* at ¶ 29. The other bullets entered at the side and rear of the passenger sides of the vehicle. *Id.* When the vehicle came to a complete stop, Lozano's body was slumped over the steering wheel. The autopsy report revealed that Lozano was shot in the head, arm, and abdomen. The shot to Lozano's head and arm entered from the left side. The shot to his abdomen entered from the right side. *Id.* at ¶ 30.

Andrade brings the current suit against United States of America; CBP; United States Office of Border Patrol ("Border Patrol"); Cabello; Tejada; Janet Napolitano ("Napolitano"), the Third Secretary of the Department of Homeland Security ("DHS") from 2009–2013; David Aguilar ("Aguilar"), the Acting Commissioner of CBP from 2011–2013; Alan Bersin ("Bersin"), Commissioner of CBP from 2011–2013; Michael Fisher ("Fisher"), Chief of Border Patrol at the time

of the incident; Rosendo Hinojosa ("Hinojosa"), Chief Patrol Agent of the Rio Grande Valley Sector from 2010–2014; David Couls ("Couls"), Patrol Agent in charge for Corpus Christi; and Ryes Diaz ("Diaz"), Supervisory Border Patrol Agent at Corpus Christi Station. *Id.* at ¶¶ 9–18.[1] Andrade brings the suit for compensatory damages and other relief.

Andrade alleges that the Agents used excessive, lethal force against Lozano in violation of the Fourth and Fifth Amendments of the U.S. Constitution and in violation of the law of nations (actionable under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350). *Id.* at ¶¶ 20, 33. Andrade further alleges that the Agents' use of excessive, lethal force against Lozano were made pursuant to "relaxed and ill-defined use of force guidelines" that "ha[d] the imprimatur of the highest-ranking officials." *Id.* at ¶¶ 33, 35. Andrade alleges that agents along the southern border regularly used excessive, lethal force against drivers of vehicles, and that at all relevant times, the Government Defendants and Supervisor Defendants knew, or reasonably should have known, that (1) agents had a regular pattern and practice of assuming positions in the paths of vehicles to create justification for the use of deadly force, (2) understood the Supervisor Defendants to have tacitly approved Border Patrol agents' shootings so long as the agents claimed a vehicle was in their path, and (3) used the Vehicle Policy to justify the unlawful use of excessive force against persons of perceived Hispanic ancestry and Mexican nationality. *Id.* at ¶ 35. Andrade refers to the use of force guidelines, which stems from CBP's 2010 Use of Force Handbook, as the "Vehicle Policy." *Id.* at ¶ 35. This Use of Force Handbook/Vehicle Policy stated:

> Deadly force may be used against the driver or other occupant of a moving motor vehicle, vessel, aircraft or other conveyance only when:
>
> a.   The officer/agent has a reasonable belief of imminent danger resulting in death or serious physical injury to the officer/agent

---

[1] Andrade refers to Napolitano, Aguilar, Bersin, Fisher, Hinojosa, Couls, and Diaz as "Supervisor Defendants." Compl. ¶ 19. Andrade refers to the United States of America, CBP and Border Patrol collectively as the "Government Defendants." *Id.* ¶ 8.

or to another person and the hazard of an uncontrolled
conveyance has been taken into consideration before firing; or

b. The public safety benefits of using deadly force outweigh the
risks to the safety of the officers/agents and/or of other persons.

*Id.* at ¶ 34.[2] The use of force policy was amended through a directive from Fisher in
March 2014 to provide more guidance on when deadly use of force may be used. *See*
Compl. ¶ 54.

Andrade alleges that the Agents' firing of live bullets in response to a moving
vehicle, absent highly unusual circumstances, is grossly excessive force, and that
each Supervisor Defendant had actual knowledge of such practices, but did not
object or demand a stop to the "systematic use of unlawful lethal force along the
southern border." *Id.* at ¶ 37. "When the Agents killed Lozano on November 3, 2011,
they did so knowing that the Supervisor Defendants had for years known of,
acquiesced in, and condoned other similar killings." *Id.* Andrade also alleges that
Government Defendants knew that the Vehicle Policy (1) permitted Border Patrol
agents to use lethal force when it clearly is not necessary, and (2) encouraged
Border Patrol agents to falsely assert that persons whom they shoot and kill were
using a motor vehicle as a weapon. *Id.* at ¶ 40.[3]

Andrade further alleges that Defendants "actively concealed Border Patrol's
unlawful practices" from the public, *id.* at ¶ 41. Andrade alleges that James F.
Tomsheck ("Tomsheck"), the former Assistant Commissioner for Internal Affairs at
CBP, "acknowledged that CBP officials actively concealed Border Patrol's unlawful
practices," *id.* at ¶ 42. Andrade alleges that Tomsheck admitted the following (the
Court quotes directly from the Complaint):

a. Border Patrol Agents actively and consistently tried to distort the
narratives around fatal shootings to cover up wrongdoing by border
agents [and] that at least seven Border Patrol shooting deaths since

---

[2] The Court relies solely on the pleadings for the language of the use of force policy, which the
Defendants do not dispute.
[3] In support of this allegation, Andrade alleges that CBP at all relevant times had a protocol
requiring the filing of a Significant Incident Report after every encounter in which a Border Patrol
agent applied use of force. Once completed, every such Report was emailed to every supervisor at
every level of CBP and on a daily basis. Compl. ¶ 38.

just 2010 were "highly suspect." Yet in none of those instances did the Supervisor Defendants take any disciplinary action against the shooter.

b. Rather than respond to the shootings appropriately, Border Patrol officials intentionally thwarted the internal affairs agency's investigation. "In nearly every instance, there was an effort by Border Patrol leadership to make a case to justify the shooting versus doing a genuine, appropriate review of the information and the facts at hand."

c. Top officials at DHS and CBP intentionally turned a blind eye to the consistent pattern of unjustified killings. "There were certainly many cases where border patrol agents or certainly CBP officers engaged in excessive use of force or abuse of migrants at the border that should have resulted in discipline where it did not." *See* Anna Werner, [*B*]*order Patrol Killings Face Renewed Scrutiny* (Aug. 19, 2014), http://www.cbsnews.com/news/investigating-unresolved-deaths-on-the-border/.

d. Top agency officials intentionally created a culture and atmosphere that promoted the excessive use of force. "The Border Patrol has a self identity of a paramilitary border security force and not that of a law enforcement agency." *Id.*

*Id.* at ¶ 42.

Furthermore, Andrade alleges that according to news reports, which are not authenticated, Tomsheck said that senior officials at CBP and elsewhere in the DHS interfered with, delayed, or hindered his office from being more aggressive in rooting out corruption, abuse and other misconduct, including civil rights violations, by telling internal affairs to stand down or back off. *Id.* at ¶ 43 (citing Andrew Becker, *Ousted Chief Accuses Border Agency of Shooting Cover-Ups, Corruption* (Aug. 14, 2014), available at: https://www.revealnews.org/article-legacy/ousted-chief-accuses-border-agency-of-shooting-cover-ups-corruption/. Tomsheck allegedly stated that instances of potential wrongdoing that he believed needed to be investigated instead would go to Border Patrol management for review and discipline, and those inquiries went nowhere or were inadequate. *Id.* at ¶ 44 (citing Becker, *Ousted Chief Accuses Border Agency of Shooting Cover-Ups, Corruption*).

Andrade only became aware of the policy after CBP publicly rejected advisory recommendations from the Police Executive Research Forum's ("PERF") on

November 5, 2013. *Id.* at ¶ 52–53. The Complaint alleges that DHS and CBP commissioned PERF to provide guidance regarding the use of lethal force. *Id.* at ¶ 46.[4] ("On November 5, 2013, Defendant Fisher announced that the agencies had decided to reject the expert, objective recommendation that they had commissioned PERF to provide . . . . [The] announcement was the first instance in which Plaintiff or any of the public had any notice of the existence of the Vehicle Policy." *Id.* at ¶¶ 52–53. CBP allegedly released the PERF report to the public in 2014, when CBP also disclosed the 2010 Use of Force Handbook. *Id.* at ¶ 55.

Andrade filed an administrative claim with CBP on June 11, 2014. *Id.* at ¶ 23. On August 29, 2014, CBP denied Andrade's claim. *Id.*[5] Andrade filed the instant suit on February 27, 2015, bringing Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, *Bivens* Fourth Amendment, *Bivens* Fifth Amendment, and Alien Tort Statute ("ATS") claims. Dkt. No. 1. Defendants filed a motion to dismiss complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) against all defendants with the Court on October 6, 2015. Dkt. No. 17 at 9–10. Defendants' motion to dismiss argues that (1) the FTCA claims must be dismissed for want of jurisdiction because Andrade has brought them against individually-named defendants instead of the United States (citing 28 U.S.C. § 2679), (2) Andrade has not sufficiently alleged personal jurisdiction over Napolitano, Bersin, Aguilar, and Fisher, (3) Andrade's FTCA claims were untimely filed, (4) the law of nations claims against the United States are barred by sovereign immunity and the Westfall Act, (5) the *Bivens* claims should be dismissed based on the doctrine of qualified immunity, (6) the *Bivens* claims should be dismissed because the applicable statute of limitations has run, (7) the *Bivens* claims against all Supervisor Defendants should be dismissed because vicarious liability is inapplicable to *Bivens* claims, and (8) the

---

[4] The Plaintiffs attach as an exhibit the PERF review of CBP's 2010 Use of Force Policy Handbook. Dkt. No. 18 Ex. A.

[5] Andrade does not provide the reason for the denial. Defendants allege that CBP denied Andrade's administrative claim as untimely because the administrative claim was filed two years and seven months after Lozano's death. Dkt. No. 17 at 12.

Fifth Amendment claim should be dismissed because excessive force claims should be analyzed exclusively under the Fourth Amendment.[6] *See generally id.*

## III. Motion to Dismiss Legal Standard

Federal Rule of Civil Procedure 12(b)(1) states that a plaintiff's claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. Miss.* 668 F.3d 281, 286 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). A dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) does not operate as an adjudication on the merits. *Guenther v. Tidewater, Inc.*, 93 F. App'x 625, 626 (5th Cir. 2004) (stating that subject matter jurisdiction "is not a judgment on the merits, and therefore the district court's judgment can have no effect as a dismissal with prejudice"); *see also* Fed. R. Civ. P. 41(b).

Ordinarily, the burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Alfonso v. United States*, 752 F.3d 622, 625 (5th Cir. 2014). A court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in a light most favorable to the plaintiff. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). However, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU*

---

[6] Defendants argue that the *Bivens* Fifth Amendment cause of action is precluded by the holding in *Graham v. Connor*, 490 U.S. 386, 395 (1989). In that case, the Supreme Court "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." *Id.* (emphasis in original). Andrade argues that by its own terms, *Graham* relegates certain claims to the Fourth Amendment only if they are brought by "free [U.S.] citizens," and thus is not applicable to Andrade's claim because Lozano was not a U.S. citizen. Dkt. No. 18 at 8 (citing *Graham*, 490 U.S. at 395; *Martinez-Aguero v. Gonzalez*, 459 F.3d 618, 624 n.5 (5th Cir. 2006)). *See also Hernandez v. Mesa*, 137 S. Ct. 2003 (2017) (per curiam).

*Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When performing a Rule 12(b)(6) analysis, all well-pleaded facts in the complaint must be accepted as true, and the complaint must be construed in a light most favorable to the plaintiff. *SEC v. Cuban*, 620 F.3d 551, 553 (5th Cir. 2010). To prevail past a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In *Ashcroft v. Iqbal*, the United States Supreme Court expounded upon the *Twombly* standard, holding that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alterations in original) (quoting Fed. R. Civ. P. 8(a)(2)).

The Supreme Court suggested a two-step analytical process for determining the sufficiency of pleadings. In step one, a court can determine which allegations are merely "labels and conclusions," "formulaic recitations," or "naked assertions." *Id.* at 678. The court does not need to accept the truth of these types of allegations. In step two, having winnowed down the allegations that the court must accept as true, the

court then determines whether those allegations "plausibly give rise to an entitlement to relief." *Id.*; *see also* Steven S. Gensler, *Rule 8, Federal Rules of Civil Procedure, Rules and Commentary* (Feb. 2017).

In *Skinner v. Switzer*, the Supreme Court clarified that under the Rule 8(a)(2) pleading standard, a plaintiff may state a plausible claim for relief without identifying any particular legal theory. 562 U.S. 521, 530–31 (2011) ("[Petitioner's] complaint is not a model of the careful drafter's art, but under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory."). The Supreme Court held that plaintiff need not provide "an exposition of his legal argument." *Id.*; *see generally Gensler*, *supra, Rule 8, Federal Rules of Civil Procedure, Rules and Commentary.* Then, in *Johnson v. City of Shelby, Mississipi,* the Supreme Court stated that "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." 135 S. Ct. 346, 346 (2014). The Supreme Court held that a plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Id.* The Fifth Circuit has held that Rule 12(b)(6) does not require the plaintiff "to present its best case or even a particularly good case, only to state a plausible case." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 263 (5th Cir. 2014). In that case, the Fifth Circuit reversed a district court dismissal of a plaintiff's claim, holding that, "Whether or not the [plaintiff] may prevail on its claim in later stages of this proceeding, it has at least stated enough to survive this facial challenge." *Id.*

## IV.    Jurisdiction over FTCA Claims

Defendants argue that the FTCA claims must be dismissed for want of jurisdiction because "they are alleged against the individually-named Defendants who have absolute immunity from claims alleging common law torts committed in the course and scope of their employment." Dkt. No. 17 at 10.

The FTCA waives sovereign immunity in two different sections of the United States Code. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 485 (2006). The first confers federal-court jurisdiction in a defined category of cases involving negligence

committed by federal employees in the course of their employment. *Id.* This jurisdictional grant covers:

> claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (2016); *see also id.*

"As to claims falling within this jurisdictional grant, the FTCA, in a second provision, makes the United States liable 'in the same manner and to the same extent as a private individual under like circumstances,' though not 'for interest prior to judgment or for punitive damages.' " *Dolan*, 546 U.S. at 485 (quoting 28 U.S.C. § 2674).

The FTCA qualifies its waiver of sovereign immunity for certain categories of claims. If one of the thirteen exceptions applies, the bar of sovereign immunity remains. *Id.* (citing 28 U.S.C. § 2680).

As an initial matter, the Court notes that the United States of America is listed as a Defendant in the suit. *See* Dkt. No. 1 at 1. Defendants argue, however, that this FTCA claim should be dismissed because Andrade's Complaint "alleges various FTCA claims against individually-named Defendants [and] [n]one of Plaintiff[']s claims are labeled to be against the United States." Dkt. No. 17 at 11. Defendants urge the Court to dismiss Andrade's FTCA claim for lack of jurisdiction, and cite to *Currie v. Guthrie*, 749 F.2d 185, 187 (5th Cir. 1984) and *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988). Dkt. No. 17 at 11.

Andrade's Complaint discusses the FTCA claim with the following language:

> Agents were acting under color of law as an employee of the United States of America, United States Department of Homeland Security, United States Bureau of Customs and Border Protection, and/or

> United States Border Patrol. In such capacity, the Agents used excessive deadly force and intentionally shot Lozano on November 3, 2011, while in the course and scope of their employment as an investigative and law enforcement officer. . . . Such acts and omissions fall within the purview of 28 U.S.C. § 2671, et. seq.

Compl. ¶¶ 149–150.

In *Galvin*, the Fifth Circuit held that the district court lacked jurisdiction over the plaintiff's claims because "Galvin did not sue the United States, the only proper defendant under the Federal Tort Claims Act." 860 F.2d at 185. Similarly, in *Currie*, the Fifth Circuit held that a federal employee was immune from common law tort liability arising from acts within the scope of government employment. 749 F.2d at 187–88. Here, Andrade has sued the United States, and has pled that Agents were acting within the course and scope of their employment. *See, e.g.*, Compl. ¶¶ 149–150. Because Andrade has sued the United States, dismissal of this suit for lack of jurisdiction is not appropriate in this case.

The Court does, however, find dismissal appropriate for Andrade's claims against the Agents, Supervisor Defendants, CBP, and the United States Office of Border Patrol. Whether the doctrine of absolute immunity applies in a particular case is a question of federal law. *Currie*, 749 F.2d at 188 (citing *Norton v. McShane*, 332 F.2d 855, 860 n.6 (5th Cir. 1964), *cert. denied*, 380 U.S. 981 (1965)). In *Barr v. Matteo*, 360 U.S. 564, 571 (1959), the Supreme Court articulated the basic test for deciding this question, holding that the privilege of absolute immunity applies so long as the action of the federal employee is within even the "outer perimeter" of the employee's "line of duty." *Barr*, 360 U.S. at 575; *see also Currie*, 749 F.2d at 188. Additionally, under the Westfall Act, federal employees acting within the scope of their employment are immunized from liability and from suit. *See Osborn v. Haley*, 549 U.S. 225, 238 (2007) (citing § 2(a)(5), 102 Stat. 4563); *see also* 28 U.S.C. § 2679 (2016). As explained by the Supreme Court, retaining the federal employee as a party defendant

> effectively denies him immunity from suit if he was entitled to such immunity under the Westfall Act. Under the Act, once the United

States Attorney certifies that the federal employee acted within the scope of [his] employment, the plaintiff properly can proceed only against the United States as defendant. The federal employee remains immune from suit. By rejecting the Attorney General's certification, the district court subjects the employee to the burden of defending a suit, a burden from which the Westfall Act spares him.

*Osborn*, 549 U.S. at 238–39 (quoting *Mitchel v. Carlson*, 896 F.2d 128, 133 (5th Cir. 1990)) (internal alterations omitted).

Andrade's Complaint alleges that the Agents were acting within the course and scope of their employment. *See* Compl. ¶¶ 149–150. In her response to Defendants' motion to dismiss, Andrade argues that there is no basis for the Court to find that the individually named Defendants are absolutely immune because the Attorney General has made no certification that the individually named Defendant employees were acting within the scope of their office or employment at the time of the incident out of which the claim arose. *See* Dkt. No. 18 at 14. This Certification of Scope of Employment, which was eventually attached by Defendants to their reply brief, *see* Dkt. No. 21 Ex. A, is signed by Rupa Bhattacharyya, Director of the Torts Branch, Civil Division of the U.S. Department of Justice, and states that Napolitano, Aguilar, Bersin, Fisher, Hinojosa, Couls, Diaz, Tejeda, and Cabello "were acting within the scope of their federal office or employment at the time of the incidents out of which Plaintiff's claims arose." *Id.*

Because this Court concludes that it does not have subject matter jurisdiction over the claims against CBP, Border Patrol, Cabello, Tejada, Napolitano, Aguilar, Bersin, Fisher, Hinojosa, Couls, and Diaz in light of Westfall immunity, the Court dismisses Andrade's FTCA claims against these Defendants. The Court finds that it does have subject matter jurisdiction over Andrade's FTCA claim against the United States of America.

## V.     Personal Jurisdiction over Napolitano, Aguilar, Bersin, and Fisher

Defendants challenge the District Court's personal jurisdiction over Napolitano, Aguilar, Bersin, and Fisher. Defendants argue that Andrade fails to

allege any facts that would support specific jurisdiction over Napolitano, Aguilar, Bersin, and Fisher. Dkt. No. 17 at 15. Defendants argue:

> Plaintiff has not . . . alleged that any of these defendants purposefully directed any act at or consummated any transaction in the State of Texas giving rise to this case. In fact, the complaint does not make any direct reference to Texas whatsoever, except to allege that the shooting incident occurred in the state. And this allegation does not even remotely involve any purposeful contact by Defendants Napolitano, Aguilar, Bersin, and Fisher.

Dkt. No. 17 at 15.

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.' " *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting Fed. Rule of Civ. Proc. 4(k)(1)(A)). Jurisdiction may be general or specific. Where a defendant has "continuous and systematic general business contacts" with the forum state, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), the court may exercise general jurisdiction over any action brought against that defendant. *Id.* at 415 n.9. Where contacts are less pervasive, the court may still exercise specific jurisdiction "in a suit arising out of or related to the defendant's contacts with the forum." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 484 (5th Cir. 2008) (citing *id.* at 414 n.8). The issue before the Court is a question of specific jurisdiction.

Texas's long-arm statute is coextensive with the Due Process Clause. *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2017 WL 2730739, at *2 (S.D. Tex. June 26, 2017) (citing *Clemons v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010)); *see also Latshaw v. Johnston*, 167 F.3d 2008, 2011 (5th Cir. 1999)). In *Walden*, the Supreme Court held that a district court in Nevada lacked personal jurisdiction over a police officer sued by airline passengers seeking damages under

*Bivens* for alleged violations of their Fourth Amendment rights because that officer lacked minimal contacts with Nevada. *See* 134 S.Ct. 1119. In that case, the defendant allegedly knew his conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada. Because the defendant "had no other contacts with Nevada, and because a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated,' " the court in Nevada could not exercise personal jurisdiction under the Due Process Clause. *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

Here, Napolitano, Aguilar, Bersin, and Fisher are not haled into court "based on the 'random, fortuitous, or attenuated' contacts [they] ma[de] by interacting with other persons affiliated with the State." *Walden*, 134 S.Ct. at 1123 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). In alleging that Supervisor Defendants "failed and refused to provide adequate training to agents regarding lawful responses to moving vehicles[ ] [and] failed and refused to appropriately discipline agents who act[ed] unlawfully pursuant to the Vehicle Policy" as well as "encourag[ed] Border Patrol agents to falsely assert that persons whom they shoot and kill were using a motor vehicle as a weapon," *see* Compl. ¶¶ 39–40, Andrade makes a *prima facie* showing that out-of-state defendants engaged in "intentional conduct . . . that creates the necessary contacts with the forum," *see Walden*, 134 S. Ct. at 1123; *see also Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Here, personal jurisdiction exists over Napolitano, Aguilar, Bersin, and Fisher because the Complaint sufficiently alleges the Supervisor Defendants' personal responsibility over a policy that allegedly led to the Agents' actions in Texas. *See Arar v. Ashcroft*, 532 F.3d 157, 174–75 (2d Cir. 2008), *vacated and superseded on reh'g en banc on other grounds*, 585 F.3d 559, 563 (2d Cir. 2009).

The Court therefore finds that Andrade has alleged sufficient facts about the role that Napolitano, Aguilar, Bersin, and Fisher played to make a *prima facie*

showing that personal jurisdiction over those defendants exists under Texas's long-arm statute.

## VI.    Applicable Statute of Limitations

The events leading to Lozano's death took place on November 3, 2011. Compl. ¶ 25. Andrade filed an administrative claim with CBP on June 11, 2014. *Id.* at ¶ 23. On August 29, 2014, CBP denied Andrade's claim. *Id.* Andrade filed the instant suit on February 27, 2015. *See* Compl., Dkt. No. 1. Defendants filed a motion to dismiss the complaint against all defendants on October 6, 2015. *See* Dkt. No. 17.

Defendants argue that the FTCA, *Bivens* Fourth Amendment, and *Bivens* Fifth Amendment claims are barred by the applicable statute of limitations. In response, Andrade argues that the Government and Supervisor Defendants' actual knowledge of the Vehicle Policy and the wrongful actions of agents acting pursuant to it, their failure to document, follow up on, or address such incidents, and their alleged intentional concealment of the unlawful conduct of agents equitably tolls all applicable statutes of limitation. Compl. ¶ 36; Dkt. No. 18 at 15–19.

A. FTCA

"[A] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ." 28 U.S.C. § 2401(b) (2016); *see also Johnson v. United States*, 460 F.3d 616, 621 (5th Cir. 2009) (quoting *United States v. Kubrick*, 444 U.S. 111, 113 (1979)); *see also Kubrick*, 444 U.S. at 117 ("Section 2401(b), the limitations provision involved here, is the balance struck by Congress in the context of tort claims against the Government; and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims."). The FTCA also "waives the immunity of the United States," and, as the Supreme Court explained in *Kubrick*, "in construing the statute of limitations, which is a condition of that waiver, [courts] should not take it upon [them]selves to extend the waiver beyond that which Congress intended." *Kubrick*, 444 U.S. at 117–18. "Neither,

however, should we assume the authority to narrow the waiver that Congress intended." *Id.* at 118 (citing *Indian Towing Co. v. United States*, 350 U.S. 61, 68–69 (1955)).

The FTCA's statute of limitations is "an affirmative defense for which the government has the burden of proof." *Trinity Marine Prods. v. United States*, 812 F.3d 481, 486 (5th Cir. 2016); *see also Sec. Indus. Ins. Co. v. United States*, 702 F.2d 1234, 1251 (5th Cir. 1983). A motion to dismiss based on FTCA time bars should be considered under Rule 12(b)(6) rather than Rule 12(b)(1). *See Trinity Marine Prods.*, 812 F.3d at 486 (citing *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015)) ("[W]e hold that the FTCA's time bars are nonjurisdictional and subject to equitable tolling.").

While the statute does not define when a claim accrues, the "general rule under the FTCA is that a tort action accrues at the time of a plaintiff's injury." *Johnson*, 460 F.3d at 621 (citing *Kubrick*, 444 U.S. at 113). "The putative plaintiff need not know the legal . . . significance of an act or an injury for the cause of action to accrue." *Id.* (internal alterations omitted) (quoting *MacMillan v. United States*, 46 F.3d 377, 381 (5th Cir. 1995)). "If some injury is discernable when the tortious act occurs, the time of event rule respecting statutes of limitations applies, and the plaintiff's cause of action is deemed to have accrued." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Circ. 2003) (quoting *Albertson v. T.J. Stevenson Co.*, 749 F.2d 223, 232 (5th Cir. 1984). As long as the nature and potential cause of the injury are known, a plaintiff need not know that the injury was negligently created. *Johnson*, 460 F.3d at 621.

B. *Bivens* Claims

Under *Bivens*, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). The relevant statute of limitations for a *Bivens* claim against an individually named defendant is controlled by borrowing the applicable state statute of limitations.

*Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999) (citing *Alford v. United States*, 693 F.2d 498, 499 (5th Cir. 1982) (per curiam)). In Texas, the statute of limitations for a tortious *Bivens* claim is two years. *Id.* ("This Court, applying Texas law, has held that the statute of limitations period on a *Bivens* claim is two years.") (citing *Pena v. United States*, 157 F.3d 984, 987 (5th Cir. 1998)).

A plaintiff's awareness encompasses two elements: "(1) The existence of the injury; and (2) causation, that is, the connection between the injury and the defendant's actions." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001); *see also Brown*, 188 F.3d at 590 (quoting the *Piotrowski* standard). A plaintiff need not know the legal cause of action, but only the facts that would ultimately support the claim. *Piotrowski*, 237 F.3d at 576 (citing *Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983)). Actual knowledge is not required "if the circumstances would lead a reasonable person to investigate further." *Piotrowski*, 237 F.3d at 576; *see also Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) ("Under federal law, the limitations period commences when 'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof.") (quoting *Vigman v. Community Nat'l Bank and Trust Co.*, 635 F.2d 455, 459 (5th Cir. 1981)).

## VII.   Fraudulent Concealment

The equitable doctrine of fraudulent concealment tolls the statute of limitations when a defendant conceals evidence of unlawful conduct by 1) having a duty to disclose and 2) breaching that duty by fraudulently concealing the existence of a cause of action. *See Seatrax, Inc v. Soneck Intern*, Inc., 200 F.3d 358, 366 (5th Cir. 2000); *Timberlake v. A.H. Robins Co.*, 727 F.2d 1363, 1366 (5th Cir. 1984).[7] The doctrine preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable. *Trinity Marine Prods.*, 812 F.3d at 481; *Lambert v.*

---

[7] "The 'mere failure to disclose a cause of action, or its mere concealment,' does not constitute fraudulent concealment for purposes of tolling the statute of limitations." *Timberlake*, 727 F.2d at 1366 (quoting *Siles v. Union Carbide Corp.*, 520 F. Supp. 865, 868–69 (S.D. Tex. 1981)). Rather, the plaintiff is under a duty to exercise reasonable diligence to discover his or her cause of action. *Id.*

*United States*, 44 F.3d 296, 298 (5th Cir. 1995). The claimant "bears the burden of justifying equitable tolling." *Trinity Marine Prods.*, 812 F.3d at 481 (quoting *Hood v. Sears Roebuck Co.*, 168 F.3d 231, 232 (5th Cir. 1999)).

Fraudulent concealment requires a plaintiff plead that "1) defendants had actual knowledge of the facts giving rise to plaintiff's cause of action, 2) defendants concealed their unlawful conduct, and 3) plaintiff failed, despite due diligence . . . to discover the facts giving rise to the cause of action." *Vernon v. City of* Dallas, 2009 WL 2486033, at *5 (N.D. Tex. Aug. 13, 2009) (citing *Tex. v. Allen Constr. Co.*, 851 F.2d 1526, 1528 (5th Cir. 1988)); *Timberlake*, 727 F.2d at 1366. A cause of action accrues, but limitations are tolled, if facts are in the control of a defendant, such that "a reasonable person could not obtain the information even with a diligent investigation." *Piotrowski*, 237 F.3d at 576; *see also Love v. National Medical Enterprises*, 230 F.3d 765, 779 (5th Cir. 2000) ("Under th[e] doctrine [of fraudulent concealment], the limitations period is tolled until the plaintiff discovers, or with reasonable diligence should have discovered, the concealed fraud."). In assessing tolling of limitations, there is no showing of fraudulent concealment if the facts were or should have been known by the plaintiff. *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 646 (5th Cir. 1999) ("The district court held that, at the point when the limited partners suffered significant damages from the sale of the project, they had enough knowledge to investigate and a reasonable investigation would have led the partners to file a claim in court. We find no error in the district court's holding."); *Fusco v John-Manville Products Corp.*, 643 F.2d 1181 (5th Cir. 1981).[8]

---

[8] The Court notes that "terminology and concepts used to describe . . . tolling doctrines vary across and within circuits." *See Abecassis v. Wyatt*, 902 F. Supp.2d 881, 896 (S.D. Tex. 2012) (citing *S.E.C. v. Microtune, Inc.*, 783 F. Supp.2d 867, 874 (N.D. Tex. 2011)) ("Courts sometimes use terms such as fraudulent concealment, the discovery rule, equitable tolling, and equitable estoppel interchangeably, which all operate to allow plaintiffs to continue with claims that may otherwise be barred by statutes of limitations, either by postponing the accrual of the claims or tolling the running of the statute of limitations.").

# VIII. Analysis

Andrade argues that the Government Defendants and Supervisor Defendants are "estopped from relying on the statute of limitations defense because they actively and fraudulently concealed the Vehicle Policy and unlawful conduct of the agents by, among other things, distorting and concealing the facts underlying each instance in which an agent applied deadly force against drivers of automobiles." Compl. ¶ 36; *see also* Dkt. No. 18 at 14–19.[9] Andrade argues that fraudulent concealment applies in tolling the instant statute of limitations because "while [she] was aware of Lozano's death on November 3, 2011, she could not reasonably connect it to any acts by the Supervisor Defendants, or to the potential liability of the Agents, until November 5, 2013." Dkt. No. 18 at 16. Andrade argues that only when the Vehicle Policy was publicly disclosed "could she suspect a 'causal connection' between Lozano's death and the acts of Supervisor Defendants or the potential liability of Agents." Dkt. No. 18 at 16 (citing *Piotrowski*, 237 F.3d at 577).

Andrade alleges that Defendants "actively and fraudulently concealed the Vehicle Policy and unlawful conduct of the agents by, among other things, distorting and concealing the facts underlying each instance in which an agent applied deadly force against drivers of automobiles" in what constituted "intentional concealment" of the policy's existence and the unlawful conduct of agents. Compl. ¶ 36. In support of the fraudulent concealment argument, Andrade cites Tomsheck's alleged admissions that CBP officials actively concealed Border Patrol's unlawful practices. Dkt. No. 18 at 16 (citing Compl. ¶ 42). It is Andrade's position that these allegations are enough to defeat the statute of limitations defense because the "defense does not 'clearly appear[ ]' on the face of the complaint." Dkt. No. 18 at 15 (citing *Camp v. RCW & Co.*, H-05-3580, 2007 WL 1306841, at *7 (S.D. Tex. May 3, 2007), *aff'd*, 342

---

[9] Andrade's response brief argues that fraudulent concealment applies to toll the statute of limitations for the actions against the individual Agents as well as the Supervisor Defendants, *see* Dkt. No. 18 at 17–18, but does not adequately explain why fraudulent concealment, even if the Court were to find it applicable to the Supervisor Defendants, is appropriate for any claims against the Agents.

F. App'x 980 (5th Cir. 2009)[10] (quoting *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987) ("A motion to dismiss for failure to state a claim . . . is a valid means to raise a limitations defense if the defense clearly appears on the face of the complaint.")).

Defendants argue that equitable tolling does not apply to this case because the cause of action accrued at the time of Lozano's death, and Andrade untimely filed the administrative claim "approximately two years and seven months" after the death occurred. Dkt. No. 17 at 12. Defendants contend that because of the untimely filing, Andrade's FTCA and *Bivens* claims fall outside of the applicable statute of limitations and should, therefore, be precluded. *Id.* at 12–13. Defendants also argue that Andrade knew of Lozano's death and the direct cause of his death so as to take timely action and that Andrade "could [have] certainly request[ed] leave to file an amended complaint" upon learning other relevant facts. Dkt. No. 21 at 9. Finally, Defendants argue that Andrade's allegations regarding Defendants' conduct are conclusory and do not rise to the level of fraudulent concealment so as to toll the statute of limitations. *Id.* at 9.

Taking all allegations in the Complaint as true, and viewing the Complaint in a light most favorable to Andrade, *see Bush*, 823 F.2d at 910; *SEC v. Cuban*, 620 F.3d at 553, the Court finds that Andrade has not shown to a level of plausibility that "a reasonable person could not obtain the information [about the cause of Lozano's death] even with a diligent investigation." *See Piotrowski*, 51 F.3d at 517; *Kubrick*, 444 U.S. at 122. Though Andrade has alleged sufficient facts through statements by Tomscheck that Border Patrol agents tried to distort narratives around fatal shootings and to thwart internal investigations as to the facts of fatal shootings, *see* Compl. ¶ 42, Andrade has not shown that such conduct affected her ability to bring suit after Lozano's death. Accepting as true Andrade's allegations

---

[10] *Camp v. RCW & Co.*, H-05-3580, 2007 WL 1306841, at *7 (S.D. Tex. May 3, 2007) and *Camp v. RCW & Co.*, 342 F. App'x 980 (5th Cir. 2009) are both unreported. The district court held that "[t]he applicability of the discovery rule and facts pled in the complaint support the possibility that the action accrued . . . within the two-year limitations period." *See Camp*, H-05-3580, 2007 WL 1306841, at *7.

that top officials at DHS and CBP "intentionally turned a blind eye to the consistent pattern of unjustified killings" and "excessive use of force," *see id.*, and that such instances of excessive use of force "should have resulted in internal discipline [but] did not," *see id.*, nevertheless, the Court concludes that such conduct did not prevent Andrade from seeking judicial recourse within two years from the date of the fatal shooting of her son. As such, the Complaint has not stated "a plausible case," *Bollinger Shipyards*, 775 F.3d at 263, that "plaintiff failed, despite due diligence . . . to discover the facts giving rise to the cause of action." *Vernon*, 2009 WL 2486033, at *5 (citing *Tex. v. Allen Constr. Co.*, 851 F.2d at 1528).

In the present case, Andrade has not shown with a level of plausibility that, though the use of force policy was in the control of Defendants, "a reasonable person could not obtain the information even with a diligent investigation." *See Piotrowski*, 51 F.3d at 517; *Kubrick*, 444 U.S. at 122. Andrade's actual knowledge of the injury and direct cause of the injury at the hands of Border Patrol agents was adequate for the statute of limitations to begin at the time of Lozano's death. *See Timberlake*, 727 F.2d at 1363; *see also Twombly*, 550 U.S. at 555 (2007) ("Factual allegations must be enough to raise a right to relief above a speculative level on the assumption that all the allegations in the complaint are true . . . ."). While Andrade alleges that subsequent knowledge of the department's use of force policies created a causal nexus to Lozano's death, the Fifth Circuit has held that the statute of limitations accrues from the "point at which the plaintiff realized that he suffered harm . . . at the defendant's hands." *Jones,* 339 F.3d at 367; *see also Albertson v. T.j. Stevenson & Co.*, 749 F.2d. 223, 232 (5th Cir. 1984) ("If some injury is discernable when the tortious act occurs, the time of event rule respecting statute of limitations applies, and the plaintiff's cause of action is deemed to have accrued.").

Andrade argues that the Fifth Circuit ruling in *Piotrowski* is applicable in this case. In *Piotrowski*, the Fifth Circuit found that Piotrowski's claims against the city were timely filed since she "shouldn't have known about the facts concerning causation before [that] time." 237 F.3d at 567. Though Piotrowski was shot in 1980, it was not until a 1993 deposition of a police department officer in a separate libel

suit that Piotrowski became aware that the homicide division purposely failed to warn her of the attack. *Id.* at 575–77. The Fifth Circuit found that the jury had sufficient evidence to conclude that Piotrowski did not know of the facts nor could have known of the facts linking the city police department to the attempt on her life. *Id.* at 576.

However, the same conclusion cannot be reached in the present suit. Unlike in *Piotrowski*, Andrade has not pled sufficient factual matter to show that Defendants prevented Andrade from discovering the use of force policy with exercise of due diligence. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The revelation of facts in *Piotrowski* showed that the department took active and affirmative steps in suppressing the police department's involvement in an attempt on Piotrowski's life, while Andrade's pleading makes no allegation that she did not know the cause of Lozano's death at the hands of Border Patrol agents.

Andrade's claims are more analogous to the Fifth Circuit's decision in *Timberlake*, where the court rejected the Plaintiff's fraudulent concealment argument and, instead, held that the statutory period began upon Timberlake's discovery of her injury or its cause and not when she learned of defendant's negligence. Timberlake began to experience various health complications stemming from an intrauterine device ("IUD"), manufactured by Robins, that was inserted four years prior. 727 F.2d at 1366. Her doctor informed her that the symptoms were caused by the IUD and that she required a hysterectomy. Three years after her procedure, Timberlake filed a negligence claim against Robins because she saw a television program concerning the same brand IUD. The court held that Timberlake knew of her injuries and their cause being the IUD from the advice of her doctor, which was communicated to her well over two years after her procedure. When Timberlake raised the fraudulent concealment doctrine, the court found that "nothing prevented [her] from undertaking an investigation or filing suit" within two years of learning from her doctor the most likely cause. *Id.* at 1367. Similarly, Andrade's actual knowledge of her son's death and the cause of his death were adequate to put her on notice that she had a cause of action.

In Andrade's case, there is no plausible showing that the Defendants "control[led] the facts surrounding causation such that a reasonable person could not obtain the information even with a diligent investigation." *See Piotrowski,* 237 F.3d at 577 n.13. The allegations are uncontroverted that Andrade learned of her son's death and the cause—use of force by border patrol agents—shortly after the incident. Andrade has not met her burden to show that the doctrine of fraudulent concealment applies in this case to toll the relevant statute of limitations.

Having found that the statute of limitations has run on the FTCA, *Bivens* Fourth Amendment, and *Bivens* Fifth Amendment claims, and without expressing a view as to the merits of Andrade's claims against Defendants, the Court finds that dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate.

## IX.    Law of Nations Claim

Andrade also brings a cause of action under the law of nations and ATS. The ATS provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350.[11] Andrade argues that the Vehicle Policy and the Defendants' acts and omissions violate the law of nations, which prohibits extrajudicial killings. *See, e.g.*, Compl. ¶ 75.

Defendants move to dismiss the law of nations claim against the United States, arguing that it is barred by sovereign immunity, Dkt. No. 17 at 15–16,[12] and the law of nations claims against the individually named Defendants, arguing that they are precluded by the Westfall Act, *id*. Andrade responds by arguing that the

---

[11] The ATS itself provides no time bar for such actions. Most courts have borrowed the ten-year statute of limitations contained in the Torture Victim Protection Act of 1991, Pub. L. 102–256, 106 Stat. 73 (1992), finding it to be the most analogous federal statute of limitations. *Van Tu v. Koster*, 364 F.3d 1196, 1199 (10th Cir. 2004) (summarizing cases).

[12] Defendants chiefly rely on *Hernandez v. United States*, 757 F.3d 249, 258–59, *adhered to in part on reh'g en banc*, 785 F.3d 117 (5th Cir. 2015), *vacated and remanded sub nom. Hernandez v. Mesa*, 137 S.Ct. 2003 (2017) (per curiam), for the proposition that "[n]othing in the ATS indicates that Congress intended to waive the United States' sovereign immunity."

international norms at issue here, which Andrade claims are *jus cogens* norms,[13] binds the sovereign regardless of its consent. Dkt. No. 18 at 21–22.

Andrade alleges that Defendants' conduct violates the norm against extrajudicial killing. Dkt. No. 18 at 21. According to the Torture Victim Protection Act ("TVPA") of 1991, an extrajudicial killing is defined as "a deliberated killing not authorized by a previous judgment pronounced by a regularly constituted court affording all the judicial guarantees which are recognized as indispensable by civilized peoples." Pub. L. 102–256, 106 Stat. 73, § 3 (1992); *see also Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659, 1665 (2013) (referring to the TVPA for the definition of "extrajudicial killing.").

In *Hernandez v. United States*, 757 F.3d 249, 258–59 (2014), *adhered to in part on reh'g en banc*, 785 F.3d 117 (5th Cir. 2015) (per curiam), *vacated and remanded sub nom. Hernandez v. Mesa*, 137 S.Ct. 2003 (2017) (per curiam), appellants similarly argued that the use of excessive force violated the international prohibition against extrajudicial killings. *Hernandez*, 757 F.3d at 259. The Fifth Circuit three-member panel held as follows in part II of the decision:

> Even assuming that to be the case, the Appellants still must show that the United States has waived sovereign immunity for this claim. Other courts to address this issue have held that the ATS does not imply any waiver of sovereign immunity. *See, e.g., Tobar v. United States,* 639 F.3d 1191, 1196 (9th Cir. 2011) ("[T]he Alien Tort Statute has been interpreted as a jurisdiction statute only—it has not been held to imply any waiver of sovereign immunity." (alteration in original)); *Goldstar*

---

[13] A *jus cogens* norm is a "peremptory norm" of international law, "a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted and which can be modified only by a subsequent norm of general international law having the same character." *See Hernandez*, 785 F.3d at 130 n.11 (Jones, J., concurring) (quoting Vienna Conv. on the Law of Treaties, art. 53, May 23, 1969, 1155 U.N.T.S. 332, 8 I.L.M. 679); *see also* Restatement (Third) of Foreign Relations Law § 102 and cmt. k (1987). The Ninth Circuit has defined *jus cogens* norms as follows:

> [*J*]*us cogens* embraces customary laws considered binding on all nations, and is derived from values taken to be fundamental by the international community, rather than from the fortuitous or self-interested choices of nations. . . . [T]he fundamental and universal norms constituting *jus cogens* transcend such consent, as exemplified by the theories underlying the judgments of the Nuremberg tribunals following World War II.

*Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 715 (9th Cir. 1992) (finding that the prohibition against official torture has attained the status of *jus cogens*); *see also* Dkt. No. 18 at 22.

(Pan.) S.A. v. United States, 967 F.2d 965, 968 (4th Cir. 1992) (same); Sanchez–Espinoza v. Reagan, 770 F.2d 202, 207 (D.C. Cir. 1985) ("The Alien Tort Statute itself is not a waiver of sovereign immunity."). These courts have held that "any party asserting jurisdiction under the Alien Tort Statute must establish, independent of that statute, that the United States has consented to suit." Tobar, 639 F.3d at 1196 (quoting Goldstar, 967 F.2d at 968.).

We agree with this interpretation of the ATS. "The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." Freeman v. United States, 556 F.3d 326, 334–35 (5th Cir. 2009) (quoting Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983)) (internal quotation marks omitted). Because sovereign immunity is jurisdictional in nature, "Congress's 'waiver of [it] must be unequivocally expressed in statutory text and will not be implied.' " Id. at 335 (alteration in original) (quoting Lane v. Pena, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996)). Nothing in the ATS indicates that Congress intended to waive the United States' sovereign immunity. . . .

The Appellants must establish, independent of the ATS, that the United States has consented to suit. They have failed to do so. Though they reference several treaties to support their claim, the Appellants have not referenced any language indicating that the United States has consented to suit under any of these treaties.

Id. at 259. The Fifth Circuit's opinion pursuant to its hearing the case en banc, see Hernandez v. United States, 785 F.3d 117 (5th Cir. 2015), affirmed the panel opinion on the issue of the ATS. Id. at 119 (reinstating part II of the three-member panel decision).

Separate concurrences, however, in the Fifth Circuit en banc decision did address the ATS claim. Judge Jones's concurrence stated that "[c]ustomary international law asserts that by their nature, jus cogens violations apply even without a nation's consent (consent being the ordinary prerequisite to rules of customary international law)." Hernandez, 785 F.3d at 128 (Jones, J. concurring, joined by Smith J., Clement, J., and Owen, J.). Judge Jones's concurrence rejected, however, the appellants' argument that the United States does not have sovereign immunity for jus cogens violations because, inter alia, "plaintiffs' theory has yet to

be adopted by any circuit court of appeals and has been repeatedly rejected, and that is because it has no valid foundation in the American constitutional structure, in the ATS, or in Supreme Court precedent." *Id.* (citations omitted).

Judge Haynes's concurrence, on the other hand, stated that *jus cogens* may represent a "category of torts" that "change[s] the ordinary rules of sovereign immunity because these acts cannot be authorized by the sovereign." *Hernandez*, 785 F.3d at 140 (Haynes, J., concurring, joined by Southwick, J. & Higginson, J.). Judge Haynes referred to a Fourth Circuit case that discusses this possibility:

> Unlike private acts that do not come within the scope of foreign official immunity, *jus cogens* violations may well be committed under color of law and, in that sense, constitute acts performed in the course of the foreign official's employment by the Sovereign. However, as a matter of international and domestic law, *jus cogens* violations are, by definition, acts that are not officially authorized by the Sovereign.

*Id.* (quoting *Yousuf v. Samantar*, 699 F.3d 763, 775–76 (4th Cir. 2012) (citing *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 718 (9th Cir. 1992) ("International law does not recognize an act that violates *jus cogens* as a sovereign act.")).

The separate concurrences demonstrate a disagreement as to whether Congress needs to act to preserve its sovereign immunity in the context of the ATS. *Compare Hernandez*, 785 F.3d at 130 n.12 (Jones, J., concurring) ("[T]he United States' immunity from suit in federal courts is the rule, subject to explicit exceptions. Therefore, Congress need not do anything to preserve its sovereign immunity.") *with Hernandez*, 785 F.3d at 140 n.12 (Haynes, J., concurring) ("The *Siderman* court's discussion of *jus cogens* supports the views expressed in this concurrence; yet, that court ultimately found that it had no jurisdiction over a foreign state (Argentina) because the Supreme Court in *Argentine Republic v. Amerada Hess Shipping Corporation*, 488 U.S. 428, 433, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989), has interpreted the [Foreign Sovereign Immunities Act or "FSIA"] as a complete and exclusive scheme governing foreign state immunity in U.S. courts. . . . . Congress does not appear to have acted in the same way to define federal court

jurisdiction over suits against the United States by foreign nationals under the ATS, except through the ATS itself.").

Andrade urges the Court to adopt the reasoning found in Judge Haynes's concurrence, *see* Dkt. No. 18 at 24; *Hernandez*, 785 F.3d at 141 (Haynes, J.) ("[I]t it seems logical that cognizable *jus cogens* norms may preclude a sovereign immunity defense"),[14] whereas Defendants urge the Court to adhere to the en banc opinion affirming part II of the panel decision. Dkt. No. 17 at 16. While Judge Haynes "conclude[d] that Plaintiffs' argument on sovereign immunity and the ATS has some force[,] . . . in this area of great delicacy involving international diplomacy and United States sovereign immunity, [she] believe[d] it is best to leave this issue to the Supreme Court or at least to a court more appropriately positioned to address these intricate issues." *Hernandez*, 785 F.3d at 142 (Haynes, J., concurring).[15] The Supreme Court did not address the ATS issue in its opinion. *See generally Hernandez v. Mesa*, 137 S. Ct. 2003 (2017) (per curiam).

The Court finds that the *Hernandez* Fifth Circuit en banc opinion compels this Court to find that the Andrade's ATS claim should be dismissed on the grounds of sovereign immunity. *See Hernandez*, 785 F.3d at 119. Additionally, because Defendants have produced a Certification of Scope of Employment from the Attorney General, *see* Section IV, *supra*, and Andrade's Complaint alleges that Agents were acting within the course and scope of employment, *see* Compl. ¶¶ 149–150, the Court finds that the law of nations claims against the Agents should accordingly be dismissed pursuant to the Westfall Act.

---

[14] In support of this view that the results of FSIA claims need not apply in the ATS context, Andrade points out language in *Sosa* stating that it is more consequential for federal courts to enforce norms against foreign sovereigns and officials than against the United States and its officials. *See* Dkt. No. 18 at 23 (citing *Sosa*, 542 U.S. at 727–28).

[15] Judge Graves concurred separately, stating that he joined, in part, Judge Haynes and Judge Dennis "in concluding that the plaintiffs' claims under the Fourth Amendment and the Alien Tort Statute (ATS) have force." *Hernandez*, 785 F.3d at 143 (Graves, J., concurring in part). He "disagree[d] with the conclusions of Judges Dennis and Haynes that [the Fifth Circuit] should forego the adjudication of such claims" and "would conclude that [the Fifth Circuit] should carefully adjudicate the ATS and Fourth Amendment claims." *Id.*

## X.    Conclusion

Because this Court concludes that it does not have subject matter jurisdiction over the FTCA claims against CBP, Border Patrol, Cabello, Tejada, Napolitano, Aguilar, Bersin, Fisher, Hinojosa, Couls, and Diaz, the Court **DISMISSES** Andrade's FTCA claims against these Defendants pursuant to Federal Rule of Civil Procedure 12(b)(1).

The Court **GRANTS** Defendants' Motion to Dismiss, Dkt. No. 17, on Andrade's FTCA, *Bivens* Fourth Amendment, and *Bivens* Fifth Amendment claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because the statute of limitations on these causes of action has run.

The Court **GRANTS** Defendants' Motion to Dismiss, Dkt. No. 17, on the law of nations claim brought under the ATS pursuant to the Fifth Circuit's decision in *Hernandez v. United States*, 785 F.3d 117 (5th Cir. 2015) (en banc) (per curiam).

The Court **STRIKES AS MOOT** Defendants' Motion for Summary Judgment, Dkt. No. 25.

The Court further **DIRECTS** the Clerk of Court to close the above-captioned case.

SIGNED this 12th day of July, 2017.

Hilda Tagle
Senior United States District Judge